OPINION
On August 7, 1997, the horse "T Cody," owned by Walter Beaver and trained by Robert DelBianco, finished first in the ninth race at Scioto Downs. On August 12, 1997, the Ohio State Racing Commission laboratory reported that the blood sample taken from T Cody prior to the race yielded a mean total carbon dioxide ("tCO2") concentration of 39.8 millimoles per liter of serum. The laboratory reported that this concentration was greater than the threshold established by the International Conference of Racing Authorities. Mr. DelBianco was charged with violating Ohio Adm. Code 3769-18-01, 3769-18-02 and3769-12-26(A)(10). On August 15, 1997, the Scioto Downs judges fined Mr. DelBianco $1,000, suspended Mr. DelBianco's license for one year, placed T Cody in last place and stripped T Cody of $5,000 in purse money.
Mr. DelBianco appealed to the Ohio State Racing Commission ("commission"). A hearing officer was appointed, and a hearing was held. On February 25, 2000, the hearing officer submitted his report and recommendation. The hearing officer found that T Cody competed in the August 7, 1997 race with a prohibited foreign substance in its system, to wit, an abnormal level of tCO2, in violation of Ohio Adm. Code3769-18-01(B)(1) and 3769-18-02(A). The hearing officer recommended that Mr. DelBianco's license be suspended for ninety days and that he pay a fine of $250.
Mr. DelBianco filed objections to the hearing officer's report and recommendation. On July 31, 2000, the commission issued its order adopting the hearing officer's report and recommendation.
Mr. DelBianco appealed to the Franklin County Court of Common Pleas. On February 26, 2001, the common pleas court filed a judgment entry which included findings of fact and conclusions of law. The common pleas court determined that the commission's order was not supported by reliable, probative and substantial evidence and was not in accordance with law. Therefore, the common pleas court reversed the commission's order, discharged all the penalties assessed against Mr. DelBianco and placed T Cody in first place for the race at issue.
The commission (hereinafter "appellant") has appealed to this court, assigning the following as error:
 1. THE COMMON PLEAS COURT ERRED BY FAILING TO GIVE DUE DEFERENCE TO THE AGENCY'S RESOLUTION OF EVIDENTIARY CONFLICTS WHEN THE AGENCY'S DETERMINATION OF SUCH MATTERS IS SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE IN ACCORDANCE WITH THE LAW.
 2. THE COMMON PLEAS COURT ERRED IN CONCLUDING THAT THERE WAS NO LEGAL AUTHORITY FOR ADDRESSING THE HIGH TCO2 LEVEL FOUND IN T-CODY'S BLOODSTREAM.
 3. THE COMMON PLEAS COURT ERRED IN CONCLUDING THAT THE HEARING EXAMINER WAS NOT INDEPENDENT, NEUTRAL, AND DETACHED.
 4. THE COMMON PLEAS COURT ERRED IN CONCLUDING THAT THERE WAS NO PROVISION FOR PRE-RACE TESTING OF HORSES.
 5. THE COMMON PLEAS COURT ERRED IN CONCLUDING THAT THE TEST RESULTS ARE INVALID FOR FAILURE TO PRESERVE A SPLIT SAMPLE.
 6. THE COMMON PLEAS COURT ERRED IN CONCLUDING THAT THE HEARING EXAMINER ERRED BY OVERRULING APPELLANT-APPELLEE'S MOTION TO SUPPLEMENT THE RECORD OR REOPEN THE HEARING.
As it may be dispositive of the remaining assignments of error, we first address appellant's second assignment of error. In its second assignment of error, appellant contends, in part, that the common pleas court erred in concluding there was no properly promulgated rule regarding excessive tCO2 levels in horses. The common pleas court found that appellant had "adopted" a standard tCO2 level (anything at or above 37 millimoles per liter of serum in horses not treated with furosemide); however, appellant had not adopted such rule under the procedure outlined in R.C. Chapter 119. Hence, the common pleas court concluded there was no violation of such per se "rule."
In order to better understand the issue presented herein, it is necessary to have a basic understanding of the substance alleged to have been in T Cody's system at excessive levels. Carbon dioxide and bicarbonate are naturally-occurring in horses. However, apparently a solution of sodium bicarbonate and other substances, called a "milkshake," can be given to a horse in order to enhance its performance.[1] The administration of such solution can result in increased levels of tCO2.
In his report and recommendation, the hearing officer stated that there was no direct evidence that Mr. DelBianco (hereinafter "appellee") or any other person administered a milkshake to T Cody; rather, the charges against appellee were based on "allegations of a per se violation of the medication rules due to" the horse's tCO2 levels. (Report and recommendation at 4.) In his findings of fact, the hearing officer found that appellant's executive director, Clifford A. Nelson II, had directed Richard A. Sams, Ph.D., to utilize the tCO2 threshold levels adopted by the International Conference of Racing Authorities for reporting tCO2
levels in race horses. Id. at 6. Appellant contracted with the Ohio State University Analytical Toxicology Laboratory to do its testing, and Dr. Sams was the director of this laboratory. The threshold level adopted by the International Conference of Racing Authorities was 37 millimoles per liter of serum. Id. at 5-6. As indicated above, T Cody's mean tCO2 level was 39 millimoles per liter of serum, which Dr. Sams adjusted upward to 39.8 millimoles per liter.
Appellee argued before the hearing officer, appellant and the common pleas court that there was no properly promulgated rule establishing that a tCO2 level of 37 millimoles per liter constituted a violation of a medication rule. Appellant contends Ohio Adm. Code 3769-18-01 and3769-18-02 provide the legal authority for a finding that appellee violated appellant's medication rules. Ohio Adm. Code 3769-18-01(B)(1), in effect at the time of the alleged violation, stated:
 * * * no horse participating in a race shall carry in its body any foreign substance.
"Foreign substance" was defined in former Ohio Adm. Code 3769-18-01(A)(2) as:
 * * * all substances, except those which exist naturally in the untreated horse at normal physiological concentration * * *.
Further, former Ohio Adm. Code 3769-18-02 stated:
 (A) The trainer shall be the absolute insurer of, and responsible for, the condition of the horses entered in a race * * *. Should the chemical or other analysis of urine or blood specimens prove positive, showing the presence of any foreign substance not permitted by rule 3769-18-01 of the Administrative Code, the trainer of the horse * * * may, in the discretion of the commission, be subjected to penalties * * *.
Appellant contends the regulations above provide that any substance found at an abnormal physiological concentration in a horse is considered a prohibited foreign substance. This may be. However, appellee argues that appellant established a set level at which tCO2 would be considered a foreign substance, yet no rule was promulgated adopting such level. Appellant contends that Ohio Adm. Code 3769-18-01(A)(2) allows it to establish methods and detection levels for prohibited foreign substances. Indeed, current Ohio Adm. Code 3769-18-01(A)(2) states:
 "Foreign substances" shall mean all classified substances except those which exist naturally in the untreated horse at normal physiological concentrations * * *. The commission may, by order, establish a system of classification of prohibited foreign substances, to include methods of detection and/or detection levels thereof * * *. [Emphasis added.]
Current Ohio Adm. Code 3769-18-01(A)(2) became effective July 1, 1999, after the alleged violation herein. Hence, the above provision, which was not contained in former Ohio Adm. Code 3769-18-01(A)(2) quoted earlier, has no effect on our resolution of the instant issues. The issue we must determine is whether or not appellant indeed established a standard regarding prohibited tCO2 concentrations and if so, whether such rule was properly promulgated.
"Rule" is defined in R.C. 119.01(C) as:
 * * * any rule, regulation, or standard, having a general and uniform operation, adopted, promulgated, and enforced by any agency under the authority of the laws governing such agency * * *.
In adopting a rule, an agency is required to comply with the promulgation procedure set forth in R.C. Chapter 119. Ohio Nurses Assn., Inc. v. Ohio State Bd. of Nursing Edn. Nurse Registration (1989),44 Ohio St.3d 73, 75, citing R.C. 119.02. Failure to comply with the proper rule-making procedure invalidates any "rule." Livisay v. Ohio Bd. of Dietetics (1991), 73 Ohio App.3d 288, 290.
Appellee points to testimony by Dr. Sams that at the time of the alleged violation herein, there was no rule establishing a 37 millimoles per liter threshold level but that there was an "order" utilizing such standard. Dr. Sams testified as follows:
 Q. Is there a certain number upon testing on which you are supposed to forward the results to the Ohio State Racing Commission?
A. Yes.
Q. And what is that number?
* * *
 A. I've been directed by the Commission to report to the Commission values that are over 37 millimoles per liter for total carbon dioxide in horses that are racing without furosemide * * *.
* * *
 Q. So therefore the number on which you were to report to the Commission is these 37 millimoles per liter; is that correct?
A. Anything over 37.
* * *
 Q. Could you go ahead and describe or outline for the record of the Court why the Commission decided to use the 37 threshold level?
 A. I ask [sic] Cliff Nelson for written — a written directive on what values to use and I received from him a memorandum ordering us to use the international thresholds. [Tr. at 100-101, 107.]
Thereafter, appellant proffered state's Exhibit 20 (which was later admitted), a January 25, 1996 letter from Mr. Nelson to Dr. Sams. Id. at 107-110. State's exhibit 20 states, in pertinent part:
 The Commission hereby directs the laboratory to use the threshold level adopted by the International Conference of Racing Authorities for reporting total carbon dioxide for those horses not receiving furosemide.
Dr. Sams went on to testify:
 Q. Were you consulted previous to January 25, 1996 by the Commission, either probably through Cliff Nelson, the executive director at the time, concerning establishment of a threshold, concerns with the sodium bicarbonate levels in horses with milkshaking?
A. Yes.
* * *
 A. I met with Mr. Nelson, to the best of my recollection, I told him that I felt that we needed something in writing with regard to a standard.
 I asked him for that standard and I recommended that if a standard were to be adopted that it be the same as the international standard.
 Q. And what was the time period between your recommendation to Mr. Nelson and Mr. Nelson's directive to you adopting the number 37 * * *?
* * *
 A. * * * The letter from Mr. Nelson is dated January 25th, 1996. I asked for a written directive sometime in the winter '95, '96. [Tr. 113, 128-129.]
Dr. Sams stated that at the time of the hearing there was no properly promulgated rule indicating that a tCO2 level above 37 millimoles was a violation of appellant's rules. Id. at 132. Dr. Sams testified that the January 25, 1996 letter was not incorporated into appellant's rules. Id. at 134.
In addition to the above, counsel for appellant stated in a memorandum to the hearing officer following the administrative hearing that in order to give effect to Ohio Adm. Code 3769-18-01(A)(2), appellant enacted "policies" establishing testing levels for various drugs. (See appellant's "CLOSING MEMORANDUM OF SUMMATION" at 2.) Appellant's counsel went on to state that for "policy purposes," appellant's executive director and staff "adopted" the threshold level of 37 millimoles per liter of serum (for horses racing without furosemide), the level adopted by the International Conference of Racing Authorities. Id. at 3. While counsel's statements in this memorandum did not constitute evidence, they did summarize the evidence before the hearing officer. Further, counsel's use of the term "policy" in relation to the threshold levels does not change the actual effect of such "policy." This so-called "policy" was in fact a rule or a regulation that had a uniform and general operation, was applied to appellee and was the basis for finding appellee in violation of the medication rules. See Ohio Nurses Assn., Inc., supra at 76 (it is the effect of the "policy" or position paper that is important, not how the agency chooses to characterize it).
Appellant cites Brown v. Ohio State Racing Comm. (June 27, 1997), Geauga App. No. 96-G-1998, unreported, for the proposition that a threshold detection level set by a testing laboratory is not an administrative rule. In Brown, the horse trainer was charged with violating Ohio Adm. Code 3769-18-01(B)(1) and 3769-18-02(A) after his horse tested positive for a prohibited substance. The trainer argued that the 20 nanogram per milliliter testing criterion established by Dr. Sams (the same Dr. Sams that is the director of the testing laboratory herein) for a confirmatory test was an administrative rule that had not been properly promulgated. Dr. Sams had testified that such figure represented the threshold amount of material upon which he could confidently report the presence of a drug and below which the testing device could not reliably differentiate between a positive result for some substance and background clutter.
The Eleventh District Court of Appeals rejected the trainer's contention, stating there was no need to give horse trainers, who are not chemists, the opportunity to comment on Dr. Sams' decision to set the minimum threshold for his testing devices. Without more background on the Brown case, we cannot analogize it to the issue presented in the present case. From what we can glean from the Brown decision, it appears the prohibited substance was not one that occurs naturally in horses but, rather, was administered to horses as an anti-inflammatory agent. The issue centered around Dr. Sams setting a minimum level, based upon his knowledge of the testing device used, at which a positive test for a foreign substance would be reported. The facts in the case at bar are distinguishable.
The alleged violation in the case at bar was not that a foreign substance in and of itself was found in T Cody (as was the case in Brown), but that a naturally-occurring substance may have been in T Cody at an unnatural level. In the present suit, the agency itself, not Dr. Sams, set a standard threshold amount at which a violation would be found (i.e., the presence of such naturally-occurring substance at an unnatural concentration). It is the establishment of such standard, by the administrative agency itself and without the benefit of rule-making procedures, that constitutes the unlawful actions herein. In this respect, Brown is not on point.
Given all of the above, we conclude that appellant adopted a standard with regard to prohibited tCO2 levels in horses which had a uniform and general operation. This standard was enforced against appellee. We note that this was not a case in which appellant determined, on a case-by-case basis, whether the tCO2 level in T Cody constituted a prohibited foreign substance. See Livisay, supra, at 290. It is true that there was ample and contradictory evidence regarding tCO2 in horses in general, the reliability of the testing device used, the method used by Dr. Sams in coming up with a mean tCO2 level for T Cody, what actions or conditions unrelated to "milkshaking" might affect a horse's tCO2 level, and what specific conditions may have affected T Cody's tCO2 level that day. However, this evidence did not relate to the clear and unequivocal standard "adopted" by appellant under which it found a violation herein.
Such standard was never promulgated under the procedures set forth in R.C. Chapter 119. Hence, appellant's order, which was based on such invalid "rule," is not in accordance with law. The common pleas court did not err in so concluding. Accordingly, appellant's second assignment of error is overruled.
Because appellee was found in violation of a "rule" that had not been properly promulgated, appellant's order was not in accordance with law and is, therefore, invalid. Hence, it is unnecessary for us to reach appellant's remaining assignments of error.
In summary, appellant's second assignment of error is overruled, and the remaining assignments of error are rendered moot. For the reasons set forth in this opinion, the judgment of the Franklin County Court of Common Pleas is affirmed.
KENNEDY and BROWN, JJ., concur.
[1] The evidence at the administrative hearing indicated that the scientific literature is equivocal as to whether milkshaking actually results in improved performance.